**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | | Chapter 11 |
| THE MONTICELLO COMPANIES, INC., | ) | Case No. 3:13-bk-05737 |
| | ) | Jointly Administered with |
| PROPERTY ACQUISITIONS, LLC, | ) | |
| | ) | Case No. 3:13-bk-05739 |
| PROPERTY ACQUISITIONS OF GEORGIA, LLC, | ) | Case No. 3:13-bk-05740 |
| | | |
| Debtors. | ) | |

---

**FINDINGS OF FACT, CONCLUSIONS OF LAW,**
**AND ORDER PURSUANT TO SECTIONS 1125 AND**
**1129 OF THE BANKRUPTCY CODE AND RULES 3017**
**AND 3020 OF THE FEDERAL RULES OF BANKRUPTCY**
**PROCEDURE CONFIRMING JOINT CHAPTER CHAPTER 11 PLAN**

Theses Chapter 11 cases came before the Court Motion for consideration of the Debtors' Joint Chapter 11 Plan [Docket No. 69] (the "Plan").[1]   A hearing to consider confirmation of the Plan was held June 2, 2014 (the "Confirmation Hearing").   Upon the evidence presented, the Court makes the following findings:[2]

A.    Exclusive Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2)), 1334(a)).   This Court has jurisdiction over these Chapter 11 case pursuant to sections 157 and 1334 of title 28 of the United States Code.   Venue is proper pursuant to sections 1408 and 1409 of title 28 of the United States Code.   Confirmation of the Plan is a core proceeding pursuant to section 157(b)(2)(L) of title 28 of the United States Code, and this Court has exclusive

---

[1]    Capitalized terms not defined herein have the meaning ascribed to such terms in the Plan.
[2]    Pursuant to Bankruptcy Rule 7052, findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, when appropriate.

jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

B.  <u>Commencement and Administration</u>.  The Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on September 23, 2013, and have operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Neither a statutory committee nor a trustee has been appointed in these cases.

C.  <u>Notice</u>.  Notice of the Confirmation Hearing was transmitted and served in compliance with the Bankruptcy Rules and the Order Approving Disclosure Statement, and Setting Hearing on Confirmation and Fixing Time for Filing Acceptances or Rejection of Plan [Docket No. 102] (the "Disclosure Statement Order"), and such transmittal and service were adequate and sufficient, and no other or further notice is or shall be required.

D.  <u>Solicitation</u>.  Solicitation of votes on the Plan complied with the terms of the Disclosure Statement Order, was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.

E.  <u>Voting</u>.  As set forth in the Ballot Tabulation [Docket No. 121], votes to accept and reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Disclosure Statement Order, and industry practice.

F.  <u>Classes Deemed to Have Accepted the Plan</u>.  Classes 1, 2 and 19 are not impaired under the Plan.  Accordingly, each holder of a Claim in such Classes is conclusively

presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

G.     Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)).   In addition to the Administrative Expenses and Priority Tax Claims listed in Section 3.1 of the Plan, which need not be classified, the Plan designates 19 Classes of Claims and Equity Interests.   The Claims and Interests placed in each Class are substantially similar to the other Claims or Interests, as the case may be, in such Class.   Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and such Classes do not unfairly discriminate between holders of Claims and Interests.   The overwhelming acceptance of the Plan shows that the Plan classification was not done for purposes of gerrymandering an impaired accepting class.

H.     Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)).   Section 3.2 of the Plan specifies that Classes 1, 2 and 19 are unimpaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

I.     Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).   Section 3.3 of the Plan specifies Classes 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17 and 18 as impaired under the Plan and specifies the treatment of Claims and Interests in such Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

J.     No Discrimination (11 U.S.C. § 1123(a)(4)).   The Plan provides for the same treatment by the Debtors for each Claim or Interest in each respective Class unless the holder of a particular Claim or Equity Interest has agreed to a less favorable treatment of such Claim or Equity Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

K.    Implementation of Plan (11 U.S.C. § 1123(a)(5)).   The Plan provides adequate and proper means for its implementation, including (among other things) the surrender of properties and the restructuring of outstanding debts, thereby satisfying section 1123(a)(5) of the Bankruptcy Code.

L.    Prohibition Against Nonvoting Equity Securities (11 U.S.C. § 1123(a)(6))., The Debtors shall not issue any nonvoting equity interests thereby satisfying section 1123(a)(6) of the Bankruptcy Code.

M.    Designation of Directors (11 U.S.C. § 1123(a)(7)).   The provisions of the Plan are appropriate and not inconsistent with the applicable provisions of the Bankruptcy Code.

N.    Plan's Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1)).   The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(l) of the Bankruptcy Code.

O.    Debtor's Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2)).   The Debtors have complied with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code.   Specifically:

•    The Debtors are proper debtors under section 109 of the Bankruptcy Code.

•    The Debtors have complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court.

•    The Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order in transmitting the Plan, the Disclosure Statement, and Ballots in soliciting and tabulating votes on the Plan.

P.      <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>.   The Debtors have proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.   The Debtors' good faith is evident from the facts and records of these Chapter 11 Cases, the Disclosure Statement, and the record of the Confirmation Hearing and other proceedings held in these Chapter 11 Cases.   The Plan represents the agreement of the primary constituencies in these cases, which in itself is indicative of good faith.   The Plan was proposed with the legitimate and honest purpose of restructuring the Debtors' debts, maximizing the value of the Debtors' estate for the benefit of creditors and other parties in interest, and preserving jobs.

Q.      <u>Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>.   Any payment made or to be made by the Debtors for services or for costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been approved by, or is subject to the approval of, this Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

R.      <u>Directors, Officers and Insiders (11 U.S.C. § 1129(a)(5))</u>   Section 4.4 of the Plan provides for the dissolution of Debtor Property Acquisitions of Georgia, LLC, and Section 4.1 of the Plan provides for the continued existence of The Monticello Companies and Property Acquisitions, LLC without any change of officers or directors thus section 1129(a)(5) of the Bankruptcy Code is satisfied.

S.      <u>No Rate Charges (11 U.S.C. § 1129(a)(6))</u>.   The Debtors do not charge rates subject to regulation by a governmental commission.   Accordingly, section 1129(a)(6) of the Bankruptcy Code is satisfied.

T.    <u>Best Interests of Creditors (11 U.S.C. § 1129(a)(7))</u>.    The liquidation analysis provided in the Disclosure Statement is persuasive and credible, has not been controverted by other evidence, and establishes that each holder of an impaired Claim or Equity Interest will receive or retain under the Plan, on account of such Claim or Equity Interest, property of a value as of the Effective Date that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code on such date.    Accordingly, the Plan satisfies section 1129(a)(7) of the Bankruptcy Code.

U.    <u>Acceptance of Certain Classes (11 U.S.C. § 1129(a)(8))</u>.    Section 1129(a)(8) is satisfied with respect to Classes 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17 and 18, which have voted to accept the Plan in accordance with section 1126(c) of the Bankruptcy Code, as set forth in the Voting Certification, and Classes  1, 2 and 19, which are not impaired under the Plan (collectively, the "Accepting Classes").

V.    <u>Treatment of Administrative, Priority Tax and Priority Non-Tax Claims (11 U.S.C. § 1129(a)(9))</u>.    The treatment of Administrative Expenses, and Priority Tax Claims under the Plan satisfies requirements of section 1129(a)(9)(A), (B) and (C) of the Bankruptcy Code.    Unless otherwise agreed by the holder of a Priority Tax Claim and the Debtors each holder of an Allowed Priority Tax Claim will receive, in full satisfaction of its Priority Tax Claim, quarterly payments from The Monticello Companies equal to the full amount of such Priority Tax Claim, with such quarterly payments beginning within 45 days of the Effective Date and ending 5 years after the Petition Date.    The Internal Revenue Service ("IRS") has filed a Claim in the case of each of Property Acquisitions, LLC and

Property Acquisitions of Georgia, LLC asserting amounts due for priority taxes.    The Debtors dispute any such amounts are due the IRS and intend to object to such claims.    To the extent it is determined that the Debtors owe such priority taxes, payment will be made in accordance with the as provided herein and in the Plan.

W.    Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(10)).    Each of Classes 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17 and 18 are impaired under the Plan and have accepted the Plan, as determined without including any acceptance of the Plan by any insider of the Debtors, thereby satisfying § 1129(a)(1) of the Bankruptcy Code.

X.    Feasibility (11 U.S.C. § 1129(a)(11)).    Through the restructuring of debts and the surrender of properties the Plan is feasible and not likely to be followed by liquidation or the need for further financial reorganization of the Debtors.    Section 1129(a)(11) is satisfied.

Y.    Payment of Fees (11 U.S.C. § 1129(a)(12)).    All fees payable under section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court on the Confirmation Date, have been paid or will be paid on or promptly after the Effective Date, and thereafter as may be required, thereby satisfying section 1129(a)(12) of the Bankruptcy Code.

Z.    Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)).    Because the Debtors do not have any ongoing obligations to pay "retiree benefits", as such term is defined in section 1114 of the Bankruptcy Code, section 1129(a)(13) is not applicable to the Plan.

AA.    <u>Identification of Plan Proponent (Fed. R. Bankr. P. 3016(a))</u>.    As required by Bankruptcy Rule 3016(a), the Plan is dated and identifies the Plan proponents.

BB.    <u>Fair and Equitable; No Unfair Discrimination (11 U.S.C. § 1129(b))</u>.    All Classes have voted to accept the Plan; the Plan thus does not discriminate unfairly and is fair and equitable as required by section 1129(b)(1) of the Bankruptcy Code.    Thus, the Plan may be confirmed.    Accordingly, upon confirmation and the occurrence of the Effective Date, the Plan shall be binding upon all of the holders of Claims and Interests.

CC.    <u>Principal Purpose of the Plan (11 U.S.C. § 1129(d))</u>.    The principal purpose of the Plan is neither the avoidance of taxes nor the avoidance of the application of Section 5 of the Securities Act of 1933.

DD.    <u>Good Faith Solicitation (11 U.S.C. § 1125(e))</u>.    Based on the record before the Court in these Chapter 11 Cases, the Debtors and their directors, officers, managers, employees, financial advisors, attorneys, and other professionals and agents have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code.

EE.    <u>Assumption and Rejection</u>.    Article V of the Plan, governing the assumption and rejection of executory contracts and unexpired leases, satisfies the requirements of section 365(b) of the Bankruptcy Code.

FF.    <u>Retention of Jurisdiction</u>.    The Bankruptcy Court may properly retain jurisdiction over the matters set forth **in** the Plan and section 1142 of the Bankruptcy Code.

GG.    <u>Judicial Notice of Docket</u>.    This Court has taken judicial notice of the docket of the Chapter 11 Case maintained by the clerk of this Court, including, without limitation,

all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered or adduced at the hearings held before this Court during the pendency of the Chapter 11 Cases.

1.    <u>Confirmation</u>.    The Plan, a copy of which is attached hereto as **Exhibit A**, is hereby CONFIRMED under section 1129 of the Bankruptcy Code.

2.    <u>Terms Binding</u>.    The terms of the Plan shall be effective and binding from and after the Confirmation Date, but subject to the Effective Date of the Plan.

3.    <u>Objections</u>.    All parties have had a full and fair opportunity to litigate all issues raised, or that might have been raised, by any objection to confirmation of the Plan, and the Court has considered any and all comments thereto.    All objections that have not been withdrawn, waived, or settled, and all reservations of rights pertaining to confirmation of the Plan included therein, are overruled on the merits for the reasons stated on the record of the Confirmation Hearing.

4.    <u>Plan Classification Controlling</u>.    The classifications of Claims and Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan.    The classifications set forth on the Ballots tendered to or returned by the Debtors' creditors and Interest holders in connection with voting on the Plan (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan, (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims and Interests under the Plan for distribution purposes, and (c) shall not be binding on the Debtors.

5.    <u>General Authorizations</u>.    The Debtors are authorized, ordered and instructed

to execute, deliver, file or record such contracts, instruments, releases, indentures and other agreements or documents and take such actions as may be reasonably necessary or appropriate consistent with the language of the Plan to effectuate, implement and further evidence the terms and conditions of the Plan without further Order of this Court and without further corporate action.

6.      Authorization to Conduct Business.    The Debtors are authorized to continue operating their businesses, managing their properties, and paying bills incurred in the ordinary course of business, including the payment of professional fees, pending consideration of all final fee applications.

7.      Governmental Approvals Not Required.    This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan, the Disclosure Statement, and any documents, instruments, or agreements, and any amendments or modifications thereto.

8.      Exemption From Transfer Taxes.    Pursuant to § 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under or in connection with the Plan, the assignment or surrender of any lease or sublease, or the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, sales, use or other similar tax nor any Uniform Commercial Code filing or recording fee or similar or other

governmental assessment.   All appropriate state or local government officials or agents shall forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing Instruments or other documents without the payment of any such tax or governmental assessment.

9.      Final Fee Applications; Professional Compensation and Reimbursement Claims/Administrative Expense Claims.   Any entity seeking an award by the Court of compensation for services rendered and/or reimbursement of expenses incurred through and including the Effective Date under sections 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code shall file its final application for allowance of such compensation and/or reimbursement by no later than 60 days after the Effective Date. Any objections to final applications for allowance of compensation and/or reimbursement shall be filed no later than seven calendar days before the hearing on such final applications.

10.      Injunction.   (a) Except to the extent otherwise expressly provided in this Order, or in the Plan, all consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, release, discharge and settlement of all Claims of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date through the Effective Date against the Debtors, or any of their assets.   Except to the extent otherwise expressly provided in this Order, subject to the occurrence of the Effective Date, this Order shall act as a discharge of all Claims against, liens on, and any other interests in the Debtors their and assets their properties, arising at any time before the Confirmation Date.

11.      Notice of Confirmation of Plan.   Pursuant to Bankruptcy Rules 2002(f),

2002(k) and 3020(c), on or before the date that is five Business Days following the entry of this Order, the Debtor shall electronically file with the Bankruptcy Court a notice of the Confirmation of the Plan and shall cause such notice to be served by first-class mail, postage prepaid, upon all holders of Claims and the U.S. Trustee, and on the parties identified on the Rule 1007(d) list of creditors and parties in interest.

12.    Applicable Non-Bankruptcy Law.    Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code and the provisions of this Confirmation Order, the Plan shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

13.    Agreement with TD Bank.    TD Bank filed an objection to the Plan based, in part, on challenges by the Debtors to the validity of certain guaranties executed by the Monticello Companies and Henry E. Dean, III.    The Debtors, following review of pertinent documentation and case law have conceded to the validity and enforceability of the guaranties by TD Bank, and language in the Plan contesting that validity has been omitted, as evidenced in the modified Plan attached hereto.    TD Bank my seek recovery on the guaranty of Mr. Dean, *provided, however,* that TD Bank shall only be entitled to seek recovery on the guaranty of Mr. Dean in an amount no greater than $247,934.54 and less any reduction in such amount through payments made under the Plan on account of Class 11.

14.    Agreement with Scarlet Portfolio, LLC.    To the extent applicable, the automatic stay imposed under section 362 of the Bankruptcy Code is lifted with respect to any foreclosure action initiated by Scarlet Portfolio, LLC and Scarlet Portfolio, LLC is authorized to proceed with foreclosure actions in respect of the Debtors' surrender of property securing Scarlet Portfolio's Claims.

15.    <u>Retention of Jurisdiction</u>.    Except as otherwise set forth herein, this Court may properly, and upon the Effective Date shall retain jurisdiction over the matters arising in and under, and related to, the Chapter 11 Cases, as set forth in Article XI of the Plan and section 1142 of the Bankruptcy Code.

DONE and ORDERED in Jacksonville, Florida, this 11th day of June, 2014

_____
Jerry A. Funk
United States Bankruptcy Judge

Eric N. McKay, Esq. is directed to serve a copy of this Order on interested parties and file a proof of service within 3 days of entry of this Order.

# Exhibit A

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
<u>**JACKSONVILLE DIVISION**</u>

| | | |
|---|---|---|
| In re: | ) | |
| | | Chapter 11 |
| THE MONTICELLO COMPANIES, INC., | ) | Case No. 3:13-bk-05737 |
| | ) | Jointly Administered with |
| PROPERTY ACQUISITIONS, LLC, | | |
| | ) | Case No. 3:13-bk-05739 |
| PROPERTY ACQUISITIONS OF GEORGIA, LLC, | ) | Case No. 3:13-bk-05740 |
| Debtors. | ) | |

<u>**JOINT CHAPTER 11 PLAN**</u>

Eric N. McKay, Esq.
**The Law Offices of Eric N. McKay**
3948 3rd Street South, Ste. 297
Jacksonville Beach, Florida 32550
(904) 358-4000
(904) 358-4001 (Facsimile)

Attorney for The Monticello Companies, Property Acquisitions, LLC, and Property Acquisitions of Georgia, LLC

Dated January 23, 2014; as modified through June 2, 2014

ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION AND
COMPUTATION OF TIME ...........................................................................................1
    1.1   Defined Terms ...........................................................................................1
    1.2   Rules of Interpretation and Computation of Time ...........................................6
ARTICLE II CLASSES OF CLAIMS AND INTERESTS.......................................................7
ARTICLE III TREATMENT OF CLAIMS AND INTERESTS .............................................8
    3.1   Unclassified Claims ...................................................................................8
    3.2   Unimpaired Classes of Claims ....................................................................9
    3.3   Impaired Classes of Claims and Interests.......................................................10
    3.3   Valuation ..................................................................................................19
ARTICLE IV MEANS FOR IMPLEMENTATION OF THE PLAN ..................................19
    4.1   Corporate Action .......................................................................................19
    4.2   Preservation of Rights of Action ..................................................................19
    4.3   Releases and Exculpation ...........................................................................20
    4.4   Liquidation and Dissolution of Property Acquisitions of Georgia, LLC ........21
ARTICLE V TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES........................................................................................................................21
ARTICLE VI PROVISIONS GOVERNING DISTRIBUTIONS...................................21
    6.1   Distributions on Claims..............................................................................21
    6.3   Claim Transfers ........................................................................................22
    6.4   Means of Cash Payments............................................................................22
    6.5   Compliance with Tax Requirements .............................................................22
    6.6   Application of Distributions ........................................................................23
    6.7   Setoffs ....................................................................................................23
ARTICLE VII PROCEDURES FOR RESOLVING DISPUTED CLAIMS ..................23
    7.1   Prosecution of Objections to Claims .............................................................23
    7.3   Treatment of Disputed Claims.....................................................................24
    7.4   Distributions on Account of Disputed Claims Once Allowed ...........................24
ARTICLE VIII CONDITIONS PRECEDENT TO EFFECTIVE DATE ......................24
ARTICLE IX CRAMDOWN ......................................................................................24
ARTICLE X DISCHARGE, TERMINATION AND INJUNCTION..............................24
    10.1   Discharge of Claims .................................................................................24
    10.2   Injunction...............................................................................................25
ARTICLE XI RETENTION OF JURISDICTION.........................................................25
ARTICLE XII MISCELLANEOUS PROVISIONS ......................................................27
    12.1   Limitation of Liability...............................................................................27
    12.2   Modification of the Plan ............................................................................27
    12.3   Severability of Plan Provisions ..................................................................27
    12.4   Successors and Assigns .............................................................................28
    12.5   No Post-Petition Interest; Penalties, Damages or Fines. ...............................28
    12.6   No Attorneys' Fees....................................................................................28
    12.7   Further Assurance.....................................................................................28
    12.8   Costs of Enforcement. ...............................................................................28
    12.9   Section 1146 Exemption: ...........................................................................28
    12.10   Discrepancies.........................................................................................29
    12.11   Default by Debtors. .................................................................................29

12.12  Financial Covenants. ...................................................................................29
12.13  Right to Reinstate Following Acceleration. ................................................29
12.14  Satisfaction of Mortgages. .........................................................................29
12.15  Closing of DIP Bank Accounts ..................................................................29
12.16  Closing of the Bankruptcy Cases ...............................................................30
12.17  Service of Documents..................................................................................30

**INTRODUCTION**

The Monticello Companies, Property Acquisitions, LLC, and Property Acquisitions of Georgia, LLC (collectively, the "Debtors") propose the following joint chapter 11 bankruptcy plan (the "Plan") for the resolution of the outstanding claims against and equity interests in the Debtors. The Debtors are the proponents of the Plan within the meaning of § 1129 of the Bankruptcy Code, 11 U.S.C. § 1129. Reference is made to the Debtors' Disclosure Statement, filed contemporaneously herewith, for a discussion of the history, businesses, results of operations, historical financial information, projections and properties of the Debtors.

**ARTICLE I**
**DEFINED TERMS, RULES OF**
**INTERPRETATION AND COMPUTATION OF TIME**

**1.1    Defined Terms**

As used in the Plan, capitalized terms have the meanings set forth below. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, will have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

(1)    **"Administrative Claim"** means a Claim for costs and expenses of administration allowed under §§ 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates and operating the businesses of the Debtors, including Claims based on liabilities incurred by the Debtors in the ordinary course of their businesses; (b) Professional Fee Claims; and (c) U.S. Trustee Fees.

(2)    **"Administrative Claim Bar Date"** means the date established by Local Rule 3071-1 by which all requests for payment of Administrative Claims are required to be filed with the Bankruptcy Court.

(3)    **"Allowed Claim"** means:

(a)    a Claim that (i) has been listed by any Debtor on its Schedules as other than disputed, contingent or unliquidated; and (ii) is not otherwise a Disputed Claim;

(b)    a Claim (i) for which a proof of Claim or request for payment of Administrative Claim has been filed by the applicable Bar Date or otherwise been deemed timely filed under applicable law and (ii) that is not otherwise a Disputed Claim;

(c)    a Claim that is allowed: (i) in any stipulation of amount executed by the Debtors and Creditor and any objector to such claim prior to the Effective Date and approved by the Bankruptcy Court; (ii) in any contract, instrument or

1

other agreement or document entered into in connection with the Plan prior to the Effective Date and approved by the Bankruptcy Court; (iii) in a Final Order; or (iv) pursuant to the Plan.

The dollar amount of each Allowed Claim shall be as of the Effective Date and only the amount of each Allowed Claim as provided herein, the Confirmation Order or Final Order, shall be enforceable against any of the Debtors or their property.

(4)    **"Allowed Class . . . Claim"** means an Allowed Claim in the particular Class described.  Any reference herein to a particular Allowed Claim includes both the secured and unsecured portions of such Claim.

(5)    **"Allowed Class . . .Interest"** means an Allowed Interest in Class 19.

(6)    **"Assets"** means all property of the Estates within the meaning of § 541 of the Bankruptcy Code, of any nature whatsoever, including, without limitation, all property, real and personal, tangible and intangible, wherever situated, as such property exists on the Effective Date or thereafter.

(7)    **"Ballot"** means the form or forms distributed to each holder of an impaired Claim entitled to vote on the Plan on which the holder indicates acceptance or rejection of the Plan.

(8)    **"Bankruptcy Cases"** means the Chapter 11 cases pending for the Debtors in the Bankruptcy Court.

(9)    **"Bankruptcy Code"** means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as now in effect or hereafter amended, as applicable to the Bankruptcy Cases.

(10)    **"Bankruptcy Court"** means the United States Bankruptcy Court for the Middle District of Florida.

(11)    **"Bankruptcy Rules"** means, collectively, the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as now in effect or hereafter amended, as applicable to the Bankruptcy Cases.

(12)    **"Bar Date"** means the applicable bar date by which a proof of Claim must be or must have been filed, as established by an order of the Bankruptcy Court, including a Bar Date Order and the Confirmation Order.

(13)    **"Bar Date Order"** means any order of the Bankruptcy Court establishing Bar Dates for filing proofs of Claims in the Bankruptcy Cases.

(14)    **"Business Day"** means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

(15)    **"Cash"** means the legal tender of the United States of America.

**(16)** **"Claim"** means a "claim," as defined in § 101(5) of the Bankruptcy Code.

**(17)** **"Claims Objection Bar Date"** means, for all Claims the latest of: (a) 120 days after the Effective Date; (b) 60 days after the filing of a proof of Claim for such Claim; and (c) such other period of limitation as may be specifically fixed by the Plan, the Confirmation Order or a Final Order.

**(18)** **"Class"** means a class of Claims or Interests, as described in Article II.

**(19)** **"Confirmation"** means the entry of the Confirmation Order on the docket of the Bankruptcy Court.

**(20)** **"Confirmation Date"** means the date on which the Bankruptcy Court enters the Confirmation Order on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

**(21)** **"Confirmation Hearing"** means the hearing(s) held by the Bankruptcy Court concerning Confirmation of the Plan, including all hearings under § 1129(b) of the Bankruptcy Code, as such hearings may be continued from time to time.

**(22)** **"Confirmation Order"** means the order or orders of the Bankruptcy Court confirming the Plan pursuant to § 1129 of the Bankruptcy Code.

**(23)** **"Creditor"** means the holder of a Claim.

**(24)** **"Debtors"** has the meaning set forth in the introductory paragraph of the Plan.

**(25)** **"Disallowed Claim"** means any Claim disallowed by Final Order, the Confirmation Order or a Claim that is listed on the Debtors' Schedules as disputed, contingent or unliquidated, and such Disallowed Claims shall be expunged in their entirety and not enforceable against the any of the Debtors or their property.

**(26)** **"Disclosure Statement"** means the disclosure statement that relates to the Plan (including all Exhibits and schedules thereto or referenced therein), as approved by the Bankruptcy Court pursuant to § 1125 of the Bankruptcy Code, as the same may be amended, modified or supplemented.

**(27)** **"Disputed Claim"** means:

**(a)** if no proof of Claim has been filed by the applicable Bar Date or has otherwise been deemed timely filed under applicable law, a Claim that is listed on any of the Debtor's Schedules as other than disputed, contingent or unliquidated, but as to which the Debtors or any other party in interest has filed an objection by the Claims Objection Bar Date and such objection has not been withdrawn or denied by a Final Order.

**(b)**        if a proof of Claim or proof of Administrative Claim has been filed by the Bar Date or has otherwise been deemed timely filed under applicable law: (i) a Claim for which an objection has been filed by the Debtors or any other party in interest by the Claims Objection Bar Date, and such objection has not been withdrawn or denied by a Final Order;

**(c)**        a Claim for damages in respect of an Executory Contract or Unexpired Lease that has been rejected or is anticipated to be rejected under § 365 of the Bankruptcy Code and as to which the applicable Bar Date has not occurred and such Claim is not otherwise an Allowed Claim; or

**(d)**        ad valorem Tax Claims with respect to property surrendered by the Debtors in satisfaction of any Claim.

**(28)    "Effective Date"** means a day, as determined by the Debtors, that is the Business Day as soon as reasonably practicable after all conditions to the Effective Date have been met or waived.

**(29)    "Entity"** means an individual, partnership, corporation, joint-stock company, unincorporated company or association, business trust, limited partnership, limited liability company or other business entity.

**(30)    "Equity Claim"** means a legal, equitable or contractual Claim arising from any share or other stock ownership interest in the Debtors.

**(31)    "Estate"** means the estate created for each Debtor in the Bankruptcy Cases pursuant to § 541 of the Bankruptcy Code.

**(32)    "Executory Contract or Unexpired Lease"** means a contract or lease to which any of the Debtors is a party that is subject to assumption, assumption and assignment or rejection under § 365 of the Bankruptcy Code.

**(33)    "Face Amount"** means when used with reference to a Claim in Class 18: (a) the full stated amount claimed by the holder of such Claim in any proof of Claim filed by the Bar Date or otherwise deemed timely filed under applicable law, if the proof of Claim specifies only a liquidated amount; (b) if no proof of Claim has been filed by the Bar Date or has otherwise been deemed timely filed under applicable law, or if the proof of Claim specified an unliquidated amount, the amount of the Claim (i) acknowledged by the Debtors in any objection filed to such Claim or in the Debtors' Schedules as an undisputed, noncontingent and liquidated Claim, (ii) estimated by the Bankruptcy Court pursuant to § 502(c) of the Bankruptcy Code; or (c) if neither (a) nor (b) above are applicable, an amount estimated by the Debtors so long as such estimated amount is not less than either (i) any amount of such Claim as estimated by the Bankruptcy Court or (ii) the liquidated portion of the amount claimed by the holder of such Claim in any proof of Claim filed by the Bar Date or otherwise deemed timely filed under applicable law.

**(34)    "Final Order"** means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction, as entered on the docket in the Bankruptcy Cases or

the docket of any other court of competent jurisdiction, that has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari or move for a new trial, reargument or rehearing has expired, and no appeal or petition for certiorari or other proceedings for a new trial, reargument or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been timely filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument or rehearing has been denied or has resulted in no modification of such order.

(35)    **"General Unsecured Claim"** means an Unsecured Claim that is not an Administrative Claim, a Cure Amount Claim, an Equity Claim, a Priority Claim, a Priority Tax Claim, or a Secured Claim.

(36)    **"Interest"** means: (a) any share or other ownership interest in the Debtors, whether or not transferable or denominated "stock," or similar security and (b) any Equity Claim.

(37)    **"IRC"** means the Internal Revenue Code, as now in effect or hereafter amended.

(38)    **"Petition Date"** means September 23, 2013.

(39)    **"Plan"** means this joint chapter 11 plan for the Debtors, as the same may be amended, modified or supplemented.

(40)    **"Priority Claim"** means a Claim against the Debtors that is entitled to priority in payment pursuant to § 507(a) of the Bankruptcy Code that is not an Administrative Claim or a Priority Tax Claim.

(41)    **"Priority Tax Claim"** means a Claim arising under federal, state or local Tax laws that is entitled to priority in payment pursuant to § 507(a)(8) of the Bankruptcy Code.

(42)    **"Professional"** means any professional employed in the Bankruptcy Cases pursuant to §§ 327 or 1103 of the Bankruptcy Code or any Professional or other entity seeking compensation or reimbursement of expenses in connection with the Bankruptcy Cases pursuant to § 503(b)(4) of the Bankruptcy Code.

(43)    "**Professional Fee Claims**" mean the Claims of (a) any Professional in the Bankruptcy Cases pursuant to §§ 330 or 1103 of the Bankruptcy Code or (b) any Professional or other Entity seeking compensation or reimbursement of expenses in connection with the Bankruptcy Cases pursuant to §§ 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code.

(44)    **"Pro Rata Share"** means, when used with reference to a distribution to a holder of an Allowed Claim in a Class pursuant to Article III, that share of the property to be distributed on account of all Allowed Claims in such Class so that the ratio of (a)(i) the amount of such property distributed on account of the particular Allowed Claim

5

to (ii) the amount of such Claim, is the same as the ratio of (b)(i) the aggregate amount of such property distributed on account of all Allowed Claims in such Class to (ii) the aggregate amount of all Allowed Claims in such Class.

(45)   **"Quarterly Distribution Date"** means the last Business Day of the month following the end of each calendar quarter after the Effective Date; provided, however, that if the Effective Date is within 45 days of the end of a calendar quarter, the first Quarterly Distribution Date will be the last Business Day of the month following the end of the first calendar quarter after the calendar quarter in which the Effective Date falls.

(46)   **"Recovery Actions"** means, collectively and individually, preference actions, fraudulent conveyance actions, rights of setoff and other claims or causes of action under Chapter 5 of the Bankruptcy Code and other bankruptcy or non-bankruptcy law.

(47)   **"Schedules"** means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtors, as required by § 521 of the Bankruptcy Code, as the same may have been or may be amended, modified or supplemented.

(48)   **"Secured Claim"** means a Claim against any of the Debtors for extensions of credit to the Debtors that is secured by a lien on property in which one of the Debtors' Estates has an interest or that is subject to setoff under § 553 of the Bankruptcy Code, to the extent of the value of the holder of such Claim's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to §§ 506(a) and, if applicable, 1129(b) of the Bankruptcy Code.

(49)   **"Tax"** means: any net income, alternative or add-on minimum, gross income, gross receipts, sales, use, ad valorem, value added, transfer, franchise, profits, license, property, environmental or other tax, assessment or charge of any kind whatsoever (together in each instance with any interest, penalty, addition to tax or additional amount) imposed by any federal, state, local or foreign taxing authority.

(50)   **"U.S. Trustee Fees"** means all fees and charges assessed against the Estates under Chapter 123 of title 28, United States Code, 28 U.S.C. §§ 1911-1930.

(51)   **"Voting Deadline"** means the deadline for submitting Ballots to accept or reject the Plan in accordance with § 1126 of the Bankruptcy Code that is specified in the Disclosure Statement, the Ballots or related solicitation documents approved by the Bankruptcy Court.

## 1.2   Rules of Interpretation and Computation of Time

### a.   Rules of Interpretation

For purposes of the Plan, unless otherwise provided herein: (i) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will

include both the singular and the plural; (ii) unless otherwise provided in the Plan, any reference in the Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (iii) any reference in the Plan to an existing document means such document as it may have been or may be amended, modified or supplemented pursuant to the Plan or Confirmation Order; (iv) any reference to a Creditor includes that entity's successors and assigns; (v) all references in the Plan to Sections and Articles are references to Sections and Articles of the Plan; (vi) the words "herein," "hereunder" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (vii) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (viii) subject to the provisions of any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, the rights and obligations arising under the Plan will be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and the Bankruptcy Rules; and (ix) the rules of construction set forth in § 102 of the Bankruptcy Code will apply.

**b.      Computation of Time**

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) will apply.

**ARTICLE II**
**CLASSES OF CLAIMS AND INTERESTS**

All Claims and Interests, except Administrative Claims and Priority Tax Claims, are placed in the following Classes.  In accordance with § 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims, as described in Section 3.1, have not been classified and thus are excluded from the Classes.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any remainder of the Claim or Interest qualifies within the description of such other Classes.

Class 1 shall consist of Priority Claims that are entitled to priority under §§ 507(a)(3) or 507(a)(4) of the Bankruptcy Code.

Class 2 shall consist of Ad Valorem Property Taxes.

Class 3 shall consist of the Secured Claim of Scarlet Portfolio, LLC – Loan 103341-001.

Class 4 shall consist of the Secured Claim of Scarlet Portfolio, LLC – Loan 103342-001.

Class 5 shall consist of the Secured Claim of Northwest Savings Bank – Loan 3558.

Class 6 shall consist of the Secured Claim of Northwest Savings Bank – Loan 3566.

Class 7 shall consist of the Secured Claim of Northwest Savings Bank – Loan 3574.

Class 8 shall consist of the Secured Claim of Northwest Savings Bank – Loan 3582.

Class 9 shall consist of the Secured Claim of Northwest Savings Bank – Loan 3590.

Class 10 shall consist of the Secured Claim of Northwest Savings Bank – Loan 3541.

Class 11 shall consist of the Secured Claim of TD Bank, N.A. – Loan 1575.

Class 12 shall consist of the Secured Claim of TD Bank, N.A. – Loan 7851.

Class 13 shall consist of the Secured Claim of TD Bank, N.A. – Loan 3924.

Class 14 shall consist of the Secured Claim of Citizens First Bank – Loan 0017.

Class 15 shall consist of the Secured Claim of Citizens First Bank – Loan 0013.

Class 16 shall consist the Secured Claim of Citizens First Bank – Loan 0016.

Class 17 shall consist of the Secured Claim of The Jacksonville Bank.

Class 18 shall consist of General Unsecured Claims.

Class 19 shall consist of all Interests in the Debtors.

**ARTICLE III**
**TREATMENT OF CLAIMS AND INTERESTS**

**3.1    Unclassified Claims**

**a.    Payment of Administrative Claims**

**(i)    Administrative Claims in General**

Except as otherwise provided herein or unless otherwise agreed by the holder of an Administrative Claim and the Debtors, each holder of an Allowed Administrative Claim will receive from the Debtors, in full satisfaction of its Administrative Claim, Cash equal to the allowed amount of such Administrative Claim either (A) on the Effective Date or (B) if the Administrative Claim is not allowed as of the Effective Date, within 30 days after the date on which (i) an order allowing such Administrative Claim becomes a Final Order or (ii) a stipulation of amount is executed by the Debtors and the holder of the Administrative Claim.

**(ii)    U.S. Trustee Fees**

On or before the Effective Date, Administrative Claims for fees payable pursuant to 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the Confirmation Hearing, will be paid by the Debtors in Cash equal to the amount of such Administrative Claims. All fees payable pursuant to 28 U.S.C. § 1930 will be paid by the Debtors in accordance therewith until the closing of the Bankruptcy Cases pursuant to § 350(a) of the Bankruptcy Code.

### (iii)   Ordinary Course Liabilities

Allowed Administrative Claims based on liabilities incurred by the Debtors in the ordinary course of their businesses will be paid by the Debtors pursuant to the terms and conditions of the particular transaction giving rise to such Administrative Claims.

### (iv)   Bar Dates for Administrative Claims

Except as otherwise provided herein, requests for payment of Administrative Claims must be filed in accordance with Bankruptcy Rule 3071-1.   Holders of Administrative Claims that are required to file and serve a request for payment of such Administrative Claims and that do not file and serve such a request by such date will be forever barred from asserting such Administrative Claims against the Debtors, or their property and such Administrative Claims will be deemed waived and released as of the Effective Date.

### b.   Payment of Priority Tax Claims

### (i)   Priority Tax Claims

Pursuant to § 1129(a)(9)(C) of the Bankruptcy Code, unless otherwise agreed by the holder of a Priority Tax Claim and the Debtors each holder of an Allowed Priority Tax Claim will receive, in full satisfaction of its Priority Tax Claim, quarterly payments from The Monticello Companies equal to the full amount of such Priority Tax Claim, with such quarterly payments beginning within 45 days of the Effective Date and ending 5 years after the Petition Date.

### (ii)   Other Provisions Concerning Treatment of Priority Tax Claims

Holders of Allowed Priority Tax Claims shall not be entitled to receive any payment on account of any penalty arising with respect to or in connection with an Allowed Priority Tax Claim.  Any such Claim or demand for any such penalty (A) will be subject to treatment in Class 18 and (B) the holder of an Allowed Priority Tax Claim will not be entitled to assess or attempt to collect such penalty from the Debtors or their property (other than as the holder of a Class 18 Claim).

## 3.2   Unimpaired Classes of Claims

The following constitute unimpaired Claims, and each holder thereof is conclusively presumed to have accepted the Plan and is not entitled to vote on the Plan.

### a.   Class 1 (Unsecured Priority Claims):

On the later of the Effective Date and the date on which the Claim is allowed, each holder of an Allowed Claim in Class 1 will be entitled to receive in satisfaction of its Allowed Class 1 Claim Cash equal to the allowed amount of such Claim against the Debtors.

     **b.**     **Class 2 (Ad Valorem Taxes):**

Prior to any Plan payments being made on account of Allowed Claims in Classes 3-18, Allowed Class 2 Claims shall be paid in full from the rental proceeds of each respective property retained by the Debtors.  Each tax collector shall retain its lien on the respective property until any outstanding ad valorem taxes have been paid in full.

Tax Claims in respect of property surrendered by the Debtors shall be disallowed not recoverable from the property or assets of the Debtors.

Nothing herein shall preclude the Debtors from challenging the tax assessments for their properties or from seeking a refund or reduction of the taxes owed pursuant to § 505 of the Bankruptcy Code or otherwise.

     **c.**     **Class 19 (Interests in The Monticello Companies):**

Holders of Class 19 Interests will retain their interest in The Monticello Companies.

**3.3**     **Impaired Classes of Claims and Interests**

The following constitute impaired Claims and, except as otherwise noted, each holder thereof is entitled to vote on the Plan.

     **a.**     **Class 3 (Secured Claim of Scarlet Portfolio, LLC – Loan 103341-001):**

As of the Petition Date, Property Acquisitions, LLC was indebted to Scarlet Portfolio, LLC under loan number 103341-001 ("Loan 3341") in the amount of $391,567. Loan 3341 is secured by separate mortgages on the real property located at (i) 5767 McLeod Avenue, Jacksonville, Florida 32219; (ii) 4117 Lorenzo Court, Jacksonville, Florida 32208; and (iii) 4125 Lorenzo Court, Jacksonville, Florida 32208 (collectively, the "Loan 3341 Collateral").  The Loan 3341 Collateral has a market value of $97,000.

In full satisfaction of Scarlet Portfolio, LLC's Allowed Class 3 Claim and Loan 3341 including any and all guaranties issued in connection therewith, Property Acquisitions, LLC shall surrender the Loan 3341 Collateral via deeds-in-lieu of foreclosure to Scarlet Portfolio (or its designated entity), or, at the option of Scarlet Portfolio, LLC, Property Acquisitions, LLC shall consent to a "friendly foreclosure" action filed by Scarlet Portfolio, LLC or its designated entity no later than 90 days after the Order confirming the Plan becomes a Final Order, and shall provide in such Order that the automatic stay imposed under Section 362 of the Bankruptcy Code is lifted with respect to any such foreclosure action and Scarlet Portfolio, LLC is authorized to proceed with a foreclosure action with respect to the Loan 3341 Collateral; and Scarlet Portfolio, LLC shall be Allowed, as of the Effective Date, a Class 18 General Unsecured Claim in the amount of $294,567, which shall be paid in accordance with the treatment afforded Class 18 Claims.

### b.    Class 4 (Secured Claim of Scarlet Portfolio, LLC – Loan 103342-001):

As of the Petition Date, Property Acquisitions, LLC was indebted to Scarlet Portfolio, LLC under loan number 103342-001 ("Loan 3342") in the amount of $284,933. Loan 3342 is secured by separate mortgages on the real property located at (i) 6457 Paragon Street, Jacksonville, Florida 32219; (ii) 2103 Benedict Road, Jacksonville, Florida 32209; (iii) 222A and 222B S. Thompson Street, Starke, Florida 32091; (iv) 224A and 224B S. Thompson Street, Starke, Florida 32091; and (v) 226A 226B, 226C, and 226D S. Thompson Street, Starke, Florida 32091 (collectively, the "Loan 3342 Collateral"). The Loan 3342 Collateral has a market value of $129,603.

In full satisfaction of Scarlet Portfolio, LLC's Allowed Class 4 Claim and Loan 3342, including any and all guaranties issued in connection therewith, Property Acquisitions, LLC shall surrender the Loan 3342 Collateral via deeds-in-lieu of foreclosure to Scarlet Portfolio (or its designated entity), or, at the option of Scarlet Portfolio, LLC, Property Acquisitions, LLC shall consent to a "friendly foreclosure" action filed by Scarlet Portfolio, LLC or its designated entity no later than 90 days after the Order confirming the Plan becomes a Final Order, and shall provide in such Order that the automatic stay imposed under Section 362 of the Bankruptcy Code is lifted with respect to any such foreclosure action and Scarlet Portfolio, LLC is authorized to proceed with a foreclosure action with respect to the Loan 3342 Collateral; and Scarlet Portfolio, LLC shall be Allowed, as of the Effective Date, a Class 18 General Unsecured Claim in the amount of $155,330, which shall be paid in accordance with the treatment afforded Class 18 Claims.

### c.    Class 5 (Secured Claim of Northwest Savings Bank – Loan 3558):

As of the Petition Date, Property Acquisitions, LLC was indebted to Northwest Savings Bank under loan number 2725003558 ("Loan 3558") in the amount of $28,699.85. Loan 3558 is secured by a mortgage on the real property located at 3518 Perry Street, Jacksonville, Florida 32206.

Northwest Savings Bank has filed a proof of claim ("Claim No. 5") in respect of Loan 3558, which shall be Allowed, as of the Effective Date, as a Secured Claim in Class 5 in the amount of $28,699.85 and shall carry interest at 5.25% and be paid by Property Acquisitions, LLC over a 15-year amortization period with monthly payments of principal and interest of $324.86. Property Acquisitions, LLC shall also pay to Northwest Savings Bank in respect of escrow payments for ad valorem property taxes for 3518 Perry Street, Jacksonville, Florida, the amount of $79.00 per month, for a total monthly payment of $403.86 during the first 2 years of the 15-year amortization period. After the second anniversary of the Effective Date, and continuing each year thereafter during the 15-year amortization period, the monthly payment to Northwest shall increase to account for any increase in ad valorem taxes. No other increases in payment shall be permitted.

Payments to Northwest Saving Bank under the Plan shall be due on the 15th day of each month and shall commence on the first month after the Effective Date after which

any and all outstanding ad valorem taxes with respect to 3518 Perry Street, Jacksonville, Florida have been paid in full.

The payments provided herein shall be in full satisfaction of Northwest Savings Bank's Allowed Class 5 Claim and Loan 3558.

The terms and provisions of the Plan and Confirmation Order shall supersede the terms and provisions of any and all loan documents between Property Acquisitions, LLC and Northwest Savings Bank and in the event of a conflict between the terms and provisions of the Plan and Confirmation Order, and the terms and provisions of any and all loan documents, the Plan and Confirmation Order shall govern.  If requested by Northwest Savings Bank, Property Acquisitions, LLC shall enter into revised loan documents consistent with the terms and provisions of the Plan and Confirmation Order.

### d.    Class 6 (Secured Claim of Northwest Savings Bank – Loan 3566):

As of the Petition Date, Property Acquisitions, LLC was indebted to Northwest Savings Bank under loan number 2725003566 ("Loan 3566") in the amount of $24,256.41.  Loan 3566 is secured by a mortgage on the real property located at 2218 14th Street, Jacksonville, Florida, 32209.

Northwest Savings Bank has filed a proof of claim ("Claim No. 7") in respect of Loan 3566, which shall be Allowed, as of the Effective Date, as a Secured Claim in Class 6 in the amount of $24,256.41 and shall carry interest at 5.25% and be paid by Property Acquisitions, LLC over a 15-year amortization period with monthly payments of principal and interest of $194.99.  Property Acquisitions, LLC shall also pay to Northwest Savings Bank in respect of escrow payments for ad valorem property taxes for 2218 14th Street, Jacksonville, Florida, the amount of $66.00 per month, for a total monthly payment of $260.99 during the first 2 years of the 15-year amortization period.  After the second anniversary of the Effective Date, and continuing each year thereafter during the 15-year amortization period, the monthly payment to Northwest shall increase to account for any increase in ad valorem taxes.  No other increases in payment shall be permitted.

Payments to Northwest Saving Bank under the Plan shall be due on the 15th day of each month and shall commence on the first month after the Effective Date after which any and all outstanding ad valorem taxes with respect to 2218 14th Street, Jacksonville, Florida have been paid in full.

The payments provided herein shall be in full satisfaction of Northwest Savings Bank's Allowed Class 6 Claim, and Loan 3566.

The terms and provisions of the Plan and Confirmation Order shall supersede the terms and provisions of any and all loan documents between Property Acquisitions, LLC and Northwest Savings Bank and in the event of a conflict between the terms and provisions of the Plan and Confirmation Order, and the terms and provisions of any and all loan documents, the Plan and Confirmation Order shall govern.  If requested by Northwest Savings Bank, Property Acquisitions, LLC shall enter into revised loan documents consistent with the terms and provisions of the Plan and Confirmation Order.

e.    **Class 7 (Secured Claim of Northwest Savings Bank – Loan 3574):**

As of the Petition Date, Property Acquisitions, LLC was indebted to Northwest Savings Bank under loan number 2725003574 ("Loan 3574") in the amount of $26,295.72. Loan 3574 is secured by a mortgage on the real property located at 5644 Mahalia Street, Jacksonville, Florida 32209.

Northwest Savings Bank has filed a proof of claim ("Claim No. 4") in respect of Loan 3574, which shall be Allowed, as of the Effective Date, as a Secured Claim in Class 7 in the amount of $26,295.72 and shall carry interest at 5.25% and be paid by Property Acquisitions, LLC over a 15-year amortization period with monthly payments of principal and interest of. $211.39. Property Acquisitions, LLC shall also pay to Northwest Savings Bank in respect of escrow payments for ad valorem property taxes for 5644 Mahalia Street, Jacksonville, Florida, the amount of $64.00 per month, for a total monthly payment of $275.39 during the first 2 years of the 15-year amortization period. After the second anniversary of the Effective Date, and continuing each year thereafter during the 15-year amortization period, the monthly payment to Northwest shall increase to account for any increase in ad valorem taxes. No other increases in payment shall be permitted.

Payments to Northwest Saving Bank under the Plan shall be due on the 15th day of each month and shall commence on the first month after the Effective Date after which any and all outstanding ad valorem taxes with respect to 5644 Mahalia Street, Jacksonville, Florida have been paid in full.

The payments provided herein shall be in full satisfaction of Northwest Savings Bank's Allowed Class 7 Claim, and Loan 3574.

The terms and provisions of the Plan and Confirmation Order shall supersede the terms and provisions of any and all loan documents between Property Acquisitions, LLC and Northwest Savings Bank and in the event of a conflict between the terms and provisions of the Plan and Confirmation Order, and the terms and provisions of any and all loan documents, the Plan and Confirmation Order shall govern. If requested by Northwest Savings Bank, Property Acquisitions, LLC shall enter into revised loan documents consistent with the terms and provisions of the Plan and Confirmation Order.

f.    **Class 8 (Secured Claim of Northwest Savings Bank – Loan 3582):**

As of the Petition Date, Property Acquisitions, LLC was indebted to Northwest Savings Bank under loan number 2725003582 ("Loan 3582") in the amount of $29,149.50. Loan 3582 is secured by a mortgage on the real property located at 2222 W. 16th Street, Jacksonville, Florida 32209.

Northwest Savings Bank has filed a proof of claim ("Claim No. 2") in respect of Loan 3582, which shall be Allowed, as of the Effective Date, as a Secured Claim in Class 8 in the amount of $29,149.50 and shall carry interest at 5.25% and be paid by Property Acquisitions, LLC over a 15-year amortization period with monthly payments of principal and interest of $234.33. Property Acquisitions, LLC shall also pay to Northwest

Savings Bank in respect of escrow payments for ad valorem property taxes for 2222 W. 16th Street, Jacksonville, Florida, the amount of $75.58 per month, for a total monthly payment of $309.91 during the first 2 years of the 15-year amortization period.  After the second anniversary of the Effective Date, and continuing each year thereafter during the 15-year amortization period, the monthly payment to Northwest shall increase to account for any increase in ad valorem taxes.  No other increases in payment shall be permitted.

Payments to Northwest Saving Bank under the Plan shall be due on the 15th day of each month and shall commence on the first month after the Effective Date after which any and all outstanding ad valorem taxes with respect to 2222 W. 16th Street, Jacksonville, Florida have been paid in full.

The payments provided herein shall be in full satisfaction of Northwest Savings Bank's Allowed Class 8 Claim, and Loan 3582.

The terms and provisions of the Plan and Confirmation Order shall supersede the terms and provisions of any and all loan documents between Property Acquisitions, LLC and Northwest Savings Bank and in the event of a conflict between the terms and provisions of the Plan and Confirmation Order, and the terms and provisions of any and all loan documents, the Plan and Confirmation Order shall govern.  If requested by Northwest Savings Bank, Property Acquisitions, LLC shall enter into revised loan documents consistent with the terms and provisions of the Plan and Confirmation Order.

**g.      Class 9 (Secured Claim of Northwest Savings Bank – Loan 3590):**

As of the Petition Date, Property Acquisitions, LLC was indebted to Northwest Savings Bank under loan number 2725003590 ("Loan 3590") in the amount of $23,283.50.  Loan 3590 is secured by a mortgage on the real property located at 2160 W. 16th Street, Jacksonville, Florida 32209.

Northwest Savings Bank has filed a proof of claim ("Claim No. 3") in respect of Loan 3590, which shall be Allowed, as of the Effective Date, as a Secured Claim in Class 9 in the amount of $23,283.50 and shall carry interest at 5.25% and be paid by Property Acquisitions, LLC over a 15-year amortization period with monthly payments of principal and interest $187.17.  Property Acquisitions, LLC shall also pay to Northwest Savings Bank in respect of escrow payments for ad valorem property taxes for 2160 W. 16th Street, Jacksonville, Florida, the amount of $54.17 per month, for a total monthly payment of $241.34 during the first 2 years of the 15-year amortization period.  After the second anniversary of the Effective Date, and continuing each year thereafter during the 15-year amortization period, the monthly payment to Northwest shall increase to account for any increase in ad valorem taxes.  No other increases in payment shall be permitted.

Payments to Northwest Saving Bank under the Plan shall be due on the 15th day of each month and shall commence on the first month after the Effective Date after which any and all outstanding ad valorem taxes with respect to 2160 W. 16th Street, Jacksonville, Florida have been paid in full.

14

The payments provided herein shall be in full satisfaction of Northwest Savings Bank's Allowed Class 9 Claim, and Loan 3590.

The terms and provisions of the Plan and Confirmation Order shall supersede the terms and provisions of any and all loan documents between Property Acquisitions, LLC and Northwest Savings Bank and in the event of a conflict between the terms and provisions of the Plan and Confirmation Order, and the terms and provisions of any and all loan documents, the Plan and Confirmation Order shall govern.  If requested by Northwest Savings Bank, Property Acquisitions, LLC shall enter into revised loan documents consistent with the terms and provisions of the Plan and Confirmation Order.

### h.    Class 10 (Secured Claim of Northwest Savings Bank – Loan 3541):

As of the Petition Date, Property Acquisitions, LLC was indebted to Northwest Savings Bank under loan number 2725003541 ("Loan 3541") in the amount of $40,411.98.  Loan 3541 is secured by a mortgage on the real property located at 1816 Cleveland Street, Jacksonville, Florida 32209.

Northwest Savings Bank has filed a proof of claim ("Claim No. 6") in respect of Loan 3541, which shall be Allowed, as of the Effective Date, as a Secured Claim in Class 10 in the amount of $40,411.98 and shall carry interest at 5.25% and be paid by Property Acquisitions, LLC over a 15-year amortization period with monthly payments of principal and interest of $324.86.  Property Acquisitions, LLC shall also pay to Northwest Savings Bank in respect of escrow payments for ad valorem property taxes for 1816 Cleveland Street, Jacksonville, Florida, the amount of $73.00 per month, for a total monthly payment of $397.86 during the first 2 years of the 15-year amortization period. After the second anniversary of the Effective Date, and continuing each year thereafter during the 15-year amortization period, the monthly payment to Northwest shall increase to account for any increase in ad valorem taxes.  No other increases in payment shall be permitted.

Payments to Northwest Saving Bank under the Plan shall be due on the 15th day of each month and shall commence on the first month after the Effective Date after which any and all outstanding ad valorem taxes with respect 1816 Cleveland Street, Jacksonville, Florida have been paid in full.

The payments provided herein shall be in full satisfaction of Northwest Savings Bank's Allowed Class 10 Claim, and Loan 3541.

The terms and provisions of the Plan and Confirmation Order shall supersede the terms and provisions of any and all loan documents between Property Acquisitions, LLC and Northwest Savings Bank and in the event of a conflict between the terms and provisions of the Plan and Confirmation Order, and the terms and provisions of any and all loan documents, the Plan and Confirmation Order shall govern.  If requested by Northwest Savings Bank, Property Acquisitions, LLC shall enter into revised loan documents consistent with the terms and provisions of the Plan and Confirmation Order.

**i.      Class 11 (Secured Claim of TD Bank, N.A. – Loans 1575 and 7851):**

As of the Petition Date, Property Acquisitions, LLC was indebted to TD Bank (a) under loan number 5020251545 ("Loan 1575") in the amount of $318,630.41, pursuant to an Assignment of Security Instruments and Other Documents, between TD Bank, N.A. and Federal Deposit Insurance Corporation in its Capacity as Receiver for First Federal Bank of North Florida, and recorded on December 12, 2012 in the public records of Duval County, Doc. # 2011267045, Book 15793, Page 2311; and (b) under loan number 5120267851 ("Loan 7851") in the amount of $259,313.13, pursuant to an Assignment of Security Instruments and Other Documents, between TD Bank, N.A. and Federal Deposit Insurance Corporation in its Capacity as Receiver for First Federal Bank of North Florida, and recorded on December 12, 2012 in the public records of Duval County, Doc. # 2011267045, Book 15793, Page 2311 (collectively, the "TD Bank Loans"). The TD Bank Loans are secured by a mortgage on a parcel of land described as Lot 10, Block 56 of Riverside (the "TD Bank Loan Collateral"). TD Bank timely filed proofs of claim in the amount of $577,934.54, with $330,000.00 of that amount being a secured claim against Property Acquisitions, LLC and $247,934.54 being an Unsecured Claim against both The Monticello Companies, Inc. and Property Acquisitions, LLC ("TMC Claim No. 4" and "PA Claim No. 10")

In full satisfaction of TMC Claim No. 4, PA Claim No. 10, the TD Bank Loans 1575 and the guaranties of The Monticello Companies, Inc. executed in connection with Loan 1575 and Loan 7851, the Debtors shall surrender to TD Bank the TD Bank Loan Collateral, and consent to a "friendly foreclosure" thereof, and TD Bank shall be Allowed an Unsecured Claim in the amount of $247,934.54. TD Bank shall be entitled to a single recovery on its $247,934.54 Allowed Unsecured Claim, which shall be paid in accordance with the treatment afforded Class 18 Claims.

**j.      Class 12 – Intentionally Omitted**

**k.      Class 13 (Secured Claim of TD Bank, N.A. – Loan 3924):**

As of the Petition Date, Property Acquisitions, LLC was indebted to TD Bank under loan number 5120293924 ("Loan 3924") in the amount of $29,112, pursuant to an Assignment of Security Instruments and Other Documents, between TD Bank, N.A. and Federal Deposit Insurance Corporation in its Capacity as Receiver for First Federal Bank of North Florida, and recorded on December 12, 2012 in the public records of Duval County, Doc. # 2011267045, Book 15793, Page 2311. Loan 3924 is secured by a mortgage on the real property located at 1650 2nd Street, Jacksonville, Florida, 32209 (the "Loan 3924 Collateral").

In respect of Loan 3541, TD Bank, N.A. shall be Allowed, as of the Effective Date, a Secured Claim in Class 13 in the amount of $39,026.58, which shall carry interest at 5.25% and be paid by Property Acquisitions, LLC over a 15-year amortization period with monthly payments of principal and interest of $313.73

Payments to TD Bank, N.A. under the Plan shall be due on the 15th day of each month and shall commence on the first month after the Effective Date after which any and all outstanding ad valorem taxes with respect to 1650 2nd Street, Jacksonville, Florida, 32209 have been paid in full.

The payments provided herein shall be in full satisfaction of TD Bank's Allowed Class 13 Claim.

The terms and provisions of the Plan and Confirmation Order shall supersede the terms and provisions of any and all loan documents between Property Acquisitions, LLC and TD Bank, N.A. and in the event of a conflict between the terms and provisions of the Plan and Confirmation Order, and the terms and provisions of any and all loan documents, the Plan and Confirmation Order shall govern.  If requested by TD Bank, N.A., Property Acquisitions, LLC shall enter into revised loan documents consistent with the terms and provisions of the Plan and Confirmation Order.

TD Bank shall retain the lien of its mortgage on the Loan 3924 Collateral, which terms are unaffected except as otherwise specifically provided in the Plan.

**l.      Class 14 (Secured Claim of Citizens First Bank – Loan 0017);**

As of the Petition Date, Property Acquisitions of Georgia, LLC was indebted to Citizens First Bank in the amount of $229,432 under loan number 730004992-00017 ("Loan 0017").  Loan 0013 is secured by mortgages on the real property located at (i) 529 Branham Ave. S.W. Rome, Georgia; (ii) 618 S. Broad Street S.W., Rome, Georgia; (iii) 20 Ross Street N.E., Rome Georgia; (iii) 505 Hardy Ave. S.W., Rome Georgia; and (iv) 8 Chester Ave. N.E., Rome Georgia (the "Loan 0017 Collateral").

The Debtors shall surrender to Citizens First Bank via a deed-in-lieu of foreclosure, the Loan 0017 Collateral, in full satisfaction of Citizens First Bank's Claims with respect to Loan 0017.

**m.      Class 15 (Secured Claim of Citizens First Bank – Loan 0013):**

As of the Petition Date, Property Acquisitions of Georgia, LLC was indebted to Citizens First Bank in the amount of $70,051 under loan number 730004992-00013 ("Loan 0013").  Loan 0013 is secured by mortgages on the real property located at (i) 2 Grover Street S.W., Rome, Georgia; (ii) 3 Ross Street N.E., Rome Georgia; (iii) 5 Ross Street N.E., Rome Georgia; and (iv) 1205 Spring Creek Street, S.W., Rome Georgia (the "Loan 0013 Collateral").

The Debtors shall surrender to Citizens First Bank via a deed-in-lieu of foreclosure, the Loan 0013 Collateral, in full satisfaction of Citizens First Bank's Claims with respect to Loan 0013.

**n.      Class 16 (Secured Claim of Citizens First Bank – Loan 0016):**

As of the Petition Date, Property Acquisitions of Georgia, LLC was indebted to Citizens First Bank in the amount of $99,869 under loan number 730004992-00016 ("Loan 0016").  Loan 0016 is secured by mortgages on the real property located at (i) 528 & 528 ½ Branham Ave. S.W., Rome, Georgia; 621 Pennington Avenue, Rome, Georgia; and (iii) 1 Van Tassel Drive, Lindale, Georgia 30147 (the "Loan 0016 Collateral").

The Debtors shall surrender to Citizens First Bank via a deed-in-lieu of foreclosure, the Loan 0016 Collateral, in full satisfaction of Citizens First Bank's Claims with respect to Loan 0016.

**o.      Class 17 (Secured Claim of The Jacksonville Bank):**

As of the Petition Date, Property Acquisitions, LLC was indebted to The Jacksonville Bank under loan number 000020011951-00001 ("Loan 1951") in the amount of $63,818.79.  Loan 1951 is secured by mortgages on the real property located at 8105 Wyoming Street; 8119 Wyoming Street; 8123 Wyoming Street; 8153 Wyoming Street; 8104 Idaho Street; 8110 Idaho Street; and 8122 Idaho Street in Jacksonville, Florida, 32220 (the "Loan 1951 Collateral").

The Jacksonville Bank has filed a proof of claim ("Claim No. 9") in respect of Loan 1951, which shall be allowed, as of the Effective Date, as a secured Claim in Class 17 in the amount of $63,818.79 and shall carry interest at 5.25% and be paid by Property Acquisitions, LLC over a 15-year amortization period with a 5-year balloon and monthly payments of principal and interest of $513.03.

Payments to The Jacksonville Bank under the Plan shall be due on the 15th day of each month and shall commence on the first month after the Effective Date.

The payments provided herein shall be in full satisfaction of The Jacksonville Bank's allowed Class 17 Claim.

The terms and provisions of the Plan and Confirmation Order shall supersede the terms and provisions of any and all loan documents between Property Acquisitions, LLC and The Jacksonville Bank and in the event of a conflict between the terms and provisions of the Plan and Confirmation Order, and the terms and provisions of any and all loan documents, the Plan and Confirmation Order shall govern.  If requested by The Jacksonville Bank, Property Acquisitions, LLC shall enter into revised loan documents consistent with the terms and provisions of the Plan and Confirmation Order.

**p.      Class 18 (General Unsecured Claims):**

Unless otherwise agreed by the holder of an Allowed Class 18 Claim and the Debtors, each holder of an Allowed Claim in Class 18 will be entitled to receive in satisfaction of its Allowed Class 18 Claim a Pro Rata Share of Quarterly Distributions from The Monticello Companies of $15,000 for 3 years from the Effective Date or 12 calendar quarters for a total distribution of $180,000 to Class 18 Creditors.

Pursuant to 11 U.S.C. § 502(d), no payments shall be made to any Entity from which property is recoverable under §§ 542, 543, 550 or 553 of the Bankruptcy Code or to any entity that is a transferee of a transfer avoidable under §§ 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) of the Bankruptcy Code, unless such entity or transferee has paid the amount, or turned over any such property from which such entity or transferee is liable under §§ 522(I), 542, 543, 550 or 553 of the Bankruptcy Code. The Claim of any recipient of a payment avoidable under §§ 542, 543, 550 or 553 of the Bankruptcy Code who fails to pay or turnover the amount of the payment to the Debtors within 60 days of a judgment or order avoiding the transfer or requiring such turnover shall be extinguished and forever barred.

### 3.3    Valuation

This Plan shall constitute a motion to value Secured Claims pursuant to § 506(a)(1) of the Bankruptcy Code. Unless otherwise agreed or determined by the Bankruptcy Court, the Allowed secured Claim of any Creditor shall be the amount set forth in this Article III. A Creditor wishing to challenge the Debtors' valuation of its secured Claim must request a valuation of its collateral by written motion filed at least 10 days prior to the Confirmation Hearing, whereupon the Bankruptcy Court will hold an evidentiary hearing to determine the value of such Creditor's Collateral. The Debtors reserve the right following such valuation hearing to amend this Plan, or surrender and abandon any collateral the value of which is determined to exceed the amount(s) set forth in this Article III.

**ARTICLE IV**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

### 4.1    Corporate Action

The entry of the Confirmation Order shall constitute authorization for the Debtors to take or to cause to be taken all company actions necessary or appropriate to consummate and implement the provisions of the Plan prior to, on, and after the Effective Date, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court. All such actions shall be deemed to have occurred and shall be in effect pursuant to applicable non-bankruptcy law and the Bankruptcy Code, without any requirement of further action by the shareholders or directors of the Debtors.

### 4.2    Preservation of Rights of Action

Except as provided in the Plan or in any contract, instrument, release or other agreement entered into or delivered in connection with the Plan, in accordance with § 1123(b) of the Bankruptcy Code, the Debtors will retain and may enforce any claims, demands, rights and causes of action that the Debtors, or their Estates, may hold, including the Recovery Actions, to the extent not expressly released under the Plan. The Debtors may pursue such retained claims, demands, rights or causes of action, as

appropriate, in accordance with the best interests of the Debtors holding such claims, demands, rights or causes of action.

**4.3    Releases and Exculpation**

**AS OF THE EFFECTIVE DATE, IN CONSIDERATION FOR THE OBLIGATIONS OF THE DEBTORS UNDER THE PLAN, EACH HOLDER OF A CLAIM WILL BE DEEMED TO FOREVER RELEASE, WAIVE AND DISCHARGE ALL CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, CAUSES OF ACTION AND LIABILITIES (OTHER THAN THE RIGHT TO ENFORCE THE DEBTORS' OBLIGATIONS UNDER THE PLAN AND THE CONTRACTS, INSTRUMENTS, RELEASES AND OTHER AGREEMENTS AND DOCUMENTS DELIVERED THEREUNDER), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, THEN EXISTING OR THEREAFTER ARISING IN LAW, EQUITY OR OTHERWISE, THAT ARE BASED IN WHOLE OR IN PART ON ANY ACT, OMISSION, TRANSACTION OR OTHER OCCURRENCE TAKING PLACE ON OR PRIOR TO THE EFFECTIVE DATE IN ANY WAY RELATING TO THE DEBTORS, THE BANKRUPTCY CASES OR THE PLAN THAT SUCH ENTITY HAS, HAD OR MAY HAVE AGAINST THE DEBTORS, OR ANY OF THEIR RESPECTIVE PRESENT OR FORMER DIRECTORS, OFFICERS, EMPLOYEES, ACCOUNTANTS (INCLUDING INDEPENDENT CERTIFIED PUBLIC ACCOUNTANTS), ADVISORS, ATTORNEYS, INVESTMENT BANKERS, UNDERWRITERS, CONSULTANTS OR OTHER REPRESENTATIVES, AGENTS OR SHAREHOLDERS, ACTING IN SUCH CAPACITY (WHICH RELEASE WILL BE IN ADDITION TO THE DISCHARGE OF CLAIMS AND TERMINATION OF INTERESTS PROVIDED HEREIN AND UNDER THE CONFIRMATION ORDER AND THE BANKRUPTCY CODE), EXCEPT FOR THOSE CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, CAUSES OF ACTION AND LIABILITIES BASED ON ACTS OR OMISSIONS OF ANY SUCH ENTITY CONSTITUTING GROSS NEGLIGENCE OR WILLFUL MISCONDUCT, AND THE DEBTORS, OR ANY OF THEIR RESPECTIVE PRESENT OR FORMER DIRECTORS, OFFICERS, EMPLOYEES, ACCOUNTANTS (INCLUDING INDEPENDENT CERTIFIED PUBLIC ACCOUNTANTS), ADVISORS, ATTORNEYS, INVESTMENT BANKERS, UNDERWRITERS, CONSULTANTS OR OTHER REPRESENTATIVES, AGENTS OR SHAREHOLDERS, ACTING IN SUCH CAPACITY, SHALL BE EXCULPATED FROM ANY AND ALL CLAIMS OF ANY KIND ARISING OUT OF OR RELATED TO THE NEGOTIATION AND IMPLEMENTATION OF THIS PLAN EXCEPT FOR THOSE CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, CAUSES OF ACTION AND LIABILITIES BASED ON ACTS OR OMISSIONS OF ANY SUCH ENTITY CONSTITUTING GROSS NEGLIGENCE OR WILLFUL MISCONDUCT.**

**4.4     Liquidation and Dissolution of Property Acquisitions of Georgia, LLC**

Upon the Effective Date and following the transfer of properties to First Citizens Bank as provided in Article III, Property Acquisitions of Georgia, LLC, shall be dissolved.  The Confirmation Order shall authorize the Clerk of the Court to close the Property Acquisitions of Georgia following consummation of the transfers of property to First Citizens Bank.

**ARTICLE V**
**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

On the Effective Date, pursuant to § 365 of the Bankruptcy Code, The Monticello Companies and Property Acquisitions, LLC will reject all Executory Contracts and Unexpired Leases currently in effect.  The entry of the Confirmation Order will constitute approval of such rejection pursuant to § 365(a) of the Bankruptcy Code.

On the Effective Date, pursuant to § 365 of the Bankruptcy Code, Property Acquisitions of Georgia, LLC will reject all Executory Contracts and Unexpired Leases to which it is a party, other than any Unexpired Lease that Citizens First Bank desires to assume.  The entry of the Confirmation Order will constitute approval of such rejection pursuant to § 365(a) of the Bankruptcy Code.

**ARTICLE VI**
**PROVISIONS GOVERNING DISTRIBUTIONS**

**6.1     Distributions on Claims**

On each Quarterly Distribution Date or as promptly thereafter as is practicable, the Debtors will make distributions to holders of Allowed Unsecured Clams pro rata and to any Disputed Claims that have become Allowed Claims during the immediately preceding calendar quarter.  The amount of such distributions will be calculated as if each then-unresolved Disputed Claim in Class 18 were an Allowed Claim in its Face Amount.

**6.2     Undeliverable Distributions**

**a.     Holding and Investment**

If any distribution to a holder of an Allowed Claim is returned to the Debtors as undeliverable, then unless and until the Debtors are notified in writing of such holder's then-current address: (i) subject to Section 6.2.b., such undeliverable distributions will remain in the possession of the Debtors and no further attempt will be made to deliver such distribution; and (ii) no attempt will be made to deliver subsequent distributions to such holder and any such distribution that such holder would otherwise be entitled to receive instead will be deemed undeliverable and remain in the possession of the Debtors.

21

### b. Forfeiture and Redistribution

Any holder of an Allowed Claim that does not assert a claim for an undeliverable distribution a written notice setting forth such holder's then-current address within two years after the later of (A) the Effective Date and (B) the last date on which a distribution was deliverable to such holder will have its claim for such undeliverable distribution discharged and will be forever barred from asserting any such claim against the Debtors or their property.

### c. No Requirement to Attempt to Locate Holders

Nothing contained in the Plan will require the Debtors to attempt to locate any holder of an Allowed Claim.

## 6.3    Claim Transfers

The Debtors will have no obligation to recognize the transfer of, or the sale of any participation in, any Allowed Claim that occurs after the Effective Date and will be entitled for all purposes herein to recognize and make distributions only to those holders of Allowed Claims that are holders of such Claims, or participants therein, as of the Effective Date.

Except as otherwise provided by Final Order, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 prior to the Effective Date will be treated as the holders of such Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to such transfer has not expired by the Effective Date.

## 6.4    Means of Cash Payments

Except as otherwise specified herein, Cash payments made pursuant to the Plan will be in United States currency by checks drawn on a domestic bank selected by the Debtors or, at the option of the Debtors, by wire transfer from a domestic bank; *provided, however*, that Cash payments to foreign holders of Allowed Claims may be made, at the option of the Debtors, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.  If a check included in a distribution to a holder of an Allowed Claim is not cashed within 180 days of the issuance thereof, the Debtors will void such check and such distribution will be treated as undeliverable in accordance with Section 6.2.

## 6.5    Compliance with Tax Requirements

To the extent applicable, the Debtors will comply with all Tax withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to the Plan will be subject to such withholding and reporting requirements.  The Debtors will be authorized to take any actions that they determine, in their reasonable discretion, to be necessary, appropriate or desirable to comply with such withholding and reporting requirements; *provided, however,* that, notwithstanding the foregoing or any

other provision of the Plan, each entity receiving a distribution pursuant to the Plan will have sole and exclusive responsibility for the satisfaction and payment of any Tax obligations imposed on it by any governmental unit on account of such distribution, including withholding obligations.

**6.6    Application of Distributions**

To the extent applicable, all distributions to a holder of an Allowed Claim will be deemed first to apply to the principal amount of such Claim until such principal amount is paid in full; any remaining portion of such distribution will then be deemed to apply to any interest accrued on such Claim prior to the Petition Date included in such Claim.

**6.7    Setoffs**

Except with respect to claims of the Debtors released pursuant to the Plan or any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, may, pursuant to § 553 of the Bankruptcy Code or applicable non-bankruptcy law, setoff against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Claim (before any distribution is made on account of such Claim) the claims, rights and causes of action of any nature that the Debtors may hold against the holder of such Allowed Claim; *provided, however*, that neither the failure to effect a setoff nor the allowance of any Claim hereunder will constitute a waiver or release by the Debtors of any claims, rights and causes of action that the Debtors may possess against such a Claim holder, which are preserved under the Plan.

**ARTICLE VII**
**PROCEDURES FOR RESOLVING DISPUTED CLAIMS**

**7.1    Prosecution of Objections to Claims**

**a.    Objections to Claims**

All objections to Claims must be filed and served on the holders of such Claims by the Claims Objection Bar Date. If an objection has not been filed by the Claims Objection Bar Date to a proof of Claim or a scheduled Claim that is not listed in the applicable Debtor's Schedules as disputed, contingent, or unliquidated, the Claim to which the proof of Claim or scheduled Claim relates will be treated as an Allowed Claim if such Claim has not been allowed earlier and is not a Disallowed Claim pursuant to being listed in the Schedules as disputed, contingent, or unliquidated.

**b.    Authority to Prosecute Objections**

After the Effective Date, only the Debtors will have the authority to file, settle, compromise, withdraw or litigate to judgment objections to Claims, including any Claim that is then pending. After the Effective Date, the Debtors may settle or compromise any Disputed Claim without notice, hearing or approval of the Bankruptcy Court. This grant

of authority to the Debtors will not limit the right of the U.S. Trustee or any other party in interest to object to Professional Fee Claims.

**7.3    Treatment of Disputed Claims**

Except as otherwise provided herein, no payments or distributions will be made on account of a Disputed Claim until such Claim becomes an Allowed Claim, if ever, except that the undisputed portion of a Disputed Claim may be paid in the discretion of the Debtors if the disputed portion is less than 10% of the total claim.

**7.4    Distributions on Account of Disputed Claims Once Allowed**

On each Quarterly Distribution Date or as promptly thereafter as is practicable, the Debtors will make all distributions on account of any Disputed Claim that has become an Allowed Claim during the immediately preceding calendar quarter.

**ARTICLE VIII**
**CONDITIONS PRECEDENT TO EFFECTIVE DATE**

The Effective Date will not occur and the Plan will not be consummated unless and until the Confirmation Order shall have become a Final Order and all other actions, documents, consents and agreements necessary to implement the Plan will have been effected, obtained and/or executed, and the Debtors provide notice of the Effective Date.

**ARTICLE IX**
**CRAMDOWN**

The Debtors request Confirmation under § 1129(b) of the Bankruptcy Code with respect to: (a) any impaired Class that does not accept the Plan pursuant to § 1126 of the Bankruptcy Code; and (b) any Class that is deemed to have not accepted the Plan pursuant to § 1126(g) of the Bankruptcy Code.  The Debtors reserve the right to modify the Plan to the extent, if any, that Confirmation pursuant to § 1129(b) of the Bankruptcy Code requires modification.

**ARTICLE X**
**DISCHARGE, TERMINATION AND INJUNCTION**

**10.1    Discharge of Claims**

a.    Except as provided in the Plan or the Confirmation Order, the rights afforded under the Plan and the treatment of Claims under the Plan will be in exchange for and in complete satisfaction, discharge and release of all Claims arising on or before the Effective Date, including any interest accrued on Claims from the Petition Date. Except as provided in the Plan or, in the Confirmation Order, Confirmation will, as of the Effective Date, discharge the Debtors from all Claims or other debts that arose on or

before the Effective Date, and all debts of the kind specified in §§ 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (A) a proof of Claim based on such debt is filed or deemed filed pursuant to § 50l of the Bankruptcy Code, (B) a Claim based on such debt is allowed pursuant to § 502 of the Bankruptcy Code, or (C) the holder of a Claim based on such debt has accepted the Plan.

b.     In accordance with the foregoing, except as provided in the Plan or the Confirmation Order, the Confirmation Order will be a judicial determination, as of the Effective Date, of a discharge of all Claims and other debts and liabilities against the Debtors, pursuant to §§ 524 and 1141 of the Bankruptcy Code, and such discharge will void any judgment obtained against the Debtors at any time, to the extent that such judgment relates to a discharged Claim.

## 10.2    Injunction

All Entities that have held, currently hold or may hold a Claim or other debt or liability of the Debtors that is discharged, released, waived, settled or deemed satisfied in accordance with the Plan will be permanently enjoined from taking any of the following actions on account of any such Claims: (i) a commencing or continuing in any manner any action or other proceeding against the Debtors, or their property, other than to enforce any right pursuant to the Plan to a distribution; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtors, or their property, other than as permitted pursuant to (a) above; (c) creating, perfecting or enforcing any lien or encumbrance of any kind against the Debtors, or their property; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtors; and (e) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the Plan. Nothing herein is intended to bar an appeal of the Confirmation Order.

## ARTICLE XI
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court will retain such jurisdiction over the Bankruptcy Cases after the Effective Date as is legally permissible, including jurisdiction to over the matters identified below:

**a.**     allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim, including the resolution of any request for payment of any Administrative Claim, and the resolution of any objections to the allowance, priority or classification of Claims;

**b.**     grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan for periods ending on or before the Effective Date;

**c.** resolve any matters related to the assumption, assumption and assignment or rejection of any Executory Contract or Unexpired Lease to which any Debtor is a party or with respect to which the Debtors may be liable and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

**d.** ensure that distributions to holders of Allowed Claims are accomplished pursuant to the Plan;

**e.** decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtors that may be pending on the Effective Date or brought thereafter;

**f.** enter such orders as may be necessary or appropriate to implement or consummate each provision of the Plan and all contracts, instruments, releases and other agreements or documents entered into or delivered in connection with the Plan, the Disclosure Statement or the Confirmation Order;

**g.** resolve any cases, controversies, suits or disputes that may arise in connection with the Recovery Actions or the consummation, interpretation or enforcement of the Plan or any contract, instrument, release or other agreement or document that is entered into or delivered pursuant to the Plan or any Entity's rights arising from or obligations incurred in connection with the Plan or such documents;

**h.** modify the Plan before or after the Effective Date pursuant to § 1127 of the Bankruptcy Code; modify the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, the Disclosure Statement or the Confirmation Order; or remedy any defect or omission or reconcile any inconsistency in the Plan, the Disclosure Statement, any Bankruptcy Court order, the Confirmation Order or any contract, instrument, release or other agreement or document entered into, delivered or created in connection with the Plan, the Disclosure Statement or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan;

**i.** issue injunctions, enforce the injunctions contained in the Plan and the Confirmation Order, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation, implementation or enforcement of the Plan or the Confirmation Order;

**j.** enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked or vacated or distributions pursuant to the Plan are enjoined or stayed;

**k.** determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, the Disclosure Statement or the Confirmation Order;

**l.** enter a final decree closing the Bankruptcy Cases; and

**m.**      determine matters concerning state, local and federal Taxes in accordance with §§ 346, 505 and 1146 of the Bankruptcy Code, including any Disputed Claims for Taxes.

**ARTICLE XII**
**MISCELLANEOUS PROVISIONS**

**12.1    Limitation of Liability**

THE DEBTORS, AND THEIR RESPECTIVE DIRECTORS, OFFICERS, EMPLOYEES, REPRESENTATIVES, PREDECESSORS, SUCCESSORS, ASSIGNS AND PROFESSIONALS, ACTING IN SUCH CAPACITY, WILL NEITHER HAVE NOR INCUR ANY LIABILITY TO ANY ENTITY FOR ANY ACT TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH OR RELATED TO THE FORMULATION, PREPARATION, DISSEMINATION, IMPLEMENTATION, CONFIRMATION OR CONSUMMATION OF THE PLAN, THE DISCLOSURE STATEMENT OR ANY CONTRACT, INSTRUMENT, RELEASE OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO, OR ANY OTHER ACT TAKEN OR OMITTED TO BE TAKEN, IN CONNECTION WITH THE PLAN; PROVIDED, HOWEVER, THAT THE FOREGOING PROVISIONS OF THIS SECTION 12.1 WILL HAVE NO EFFECT ON (A) THE LIABILITY OF ANY ENTITY THAT WOULD OTHERWISE RESULT FROM THE FAILURE TO PERFORM OR PAY ANY OBLIGATION OR LIABILITY UNDER THE PLAN OR ANY CONTRACT, INSTRUMENT, RELEASE OR OTHER AGREEMENT OR DOCUMENT TO BE ENTERED INTO OR DELIVERED IN CONNECTION WITH THE PLAN OR (B) THE LIABILITY OF ANY ENTITY THAT WOULD OTHERWISE RESULT FROM ANY SUCH ACT OR OMISSION TO THE EXTENT THAT SUCH ACT OR OMISSION IS DETERMINED IN A FINAL ORDER TO HAVE CONSTITUTED GROSS NEGLIGENCE OR WILLFUL MISCONDUCT.

**12.2    Modification of the Plan**

Subject to the restrictions on modifications set forth in § 1127 of the Bankruptcy Code the Debtors reserve the right to alter, amend or modify the Plan before its substantial consummation.

**12.3    Severability of Plan Provisions**

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision then will be applicable as altered or interpreted; provided, however, that any such alteration or interpretation must be in form and substance acceptable to the Debtors and the person or entity directly affected by such provision.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full

force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.    The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable.

**12.4    Successors and Assigns**

The rights, benefits and obligations of any Entity named or referred to in the Plan will be binding on, and will inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

**12.5    No Post-Petition Interest; Penalties, Damages or Fines.**

Except as expressly stated in this Plan, or allowed by Final Order, no interest, penalties, late charges or costs arising after the Petition Date are to be allowed on any Claim.

**12.6    No Attorneys' Fees.**

No attorneys' fees shall be paid with respect to any Allowed Claim except as specified herein or as allowed by Final Order.

**12.7    Further Assurance.**

If at any time the Debtors shall consider or be advised that any further releases or assurances are reasonably necessary or desirable to carry out the provisions hereof and the transactions contemplated herein, the Debtors or Creditors, as the case may be, shall, upon reasonable request, execute and deliver any and all documents and assurances, and do all things necessary or appropriate to carry out fully the provisions of this Plan.

**12.8    Costs of Enforcement.**

If the Debtors are required to initiate litigation or a contested proceeding to enforce the provisions of this Plan against any holder of a Claim, the Debtors shall be entitled to recover from such claim holder all reasonable attorney fees and costs incurred in such effort, including appellate fees and costs.

**12.9    Section 1146 Exemption:**

Pursuant to § 1146(c) of the Bankruptcy Code, the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by this Plan, or the revesting, transfer, or sale of any real or personal property of the Debtors pursuant to, in implementation of, or as contemplated by this Plan, shall not be taxed under any state or local law imposing a stamp tax, transfer tax, or similar tax or fee.  This exemption shall apply to any deed in lieu of foreclosure given by Debtors to implement the surrender of property contemplated by this Plan.

**12.10   Discrepancies.**

In the event of any discrepancy between the terms of this Plan and the Disclosure Statement, the terms of this Plan shall control.

**12.11   Default by Debtors.**

A default by the Debtors occurs only when a breach of the terms of this Plan or any mortgage is not cured within 20 days of the receipt by the Debtors of notice of such breach.  The notice must be written and from the party affected by the breach.  A breach that is not timely cured shall be a default under this Plan.  Unless the Debtors have defaulted under this Plan, no Entity may proceed with litigation against the Debtors or their property.

**12.12   Financial Covenants.**

Except as otherwise provided herein, to the extent any prepetition loan documents require the Debtors to maintain specified loan to value ratios, debt service coverage ratios, cash balances, interest reserves, escrow accounts or the like, such provisions shall be deemed unenforceable.

**12.13   Right to Reinstate Following Acceleration.**

The Debtors shall have the right to cure and reinstate any mortgage following default and acceleration by paying to such lender all delinquent payments and reimbursing the lender for all reasonable expenses incurred in connection with the default.  The right of reinstatement may be exercised by the Debtors at any time prior to the judicial sale of the Collateral.

**12.14   Satisfaction of Mortgages.**

Except as otherwise provided herein, Creditors holding Claims subject to a mortgage shall be required to deliver and record satisfactions of their mortgages and security interests in their Collateral upon payment or satisfaction of their Allowed Claim(s) as provided in this Plan.  In addition to the remedies provided by law, the Debtors shall be entitled to the remedy of specific performance against such Creditor to enforce the provisions of this Section 12.14.

**12.15   Closing of DIP Bank Accounts**

Closing of DIP Bank Accounts:  Following confirmation, the debtor in possession bank accounts may be closed and the Debtors shall be entitled to purchase or sell property, incur debt or engage in any investment or business activity which they deem appropriate without the necessity of obtaining Bankruptcy Court approval or modification of the Plan.  Any income earned by the Debtors following the entry of the Confirmation Order shall not be deemed property of the Estate.

**12.16   Closing of the Bankruptcy Cases**

The Confirmation Order shall proved that the monthly payment of Allowed Claims pursuant to the Plan shall not give rise to U.S. Trustee fees and that the Bankruptcy Cases shall be closed upon the resolution of Claim objections to Disputed Claims.

**12.17   Service of Documents**

Any pleading, notice or other document required by the Plan or Confirmation Order to be served on or delivered to the Debtors must be sent by overnight delivery service, facsimile transmission, courier service or messenger to:

The Monticello Companies
580 Ellis Road S. Ste. 118
Jacksonville, Florida 32254-3567

– and –

Eric N. McKay, Esq.
The Law Offices of Eric N. McKay
3948 3rd Street South, Ste 297
Jacksonville, Beach Florida 32250

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

**THE MONTICELLO COMPANIES**

By: _____*/s/ Henry E. Dean, III*_____
Henry E. Dean, III
Its President

**PROPERTY ACQUISITIONS, LLC**

By: _____*/s/ N.B. Corbin, Jr.*_____
N.B. Corbin, Jr.
Manager

**PROPERTY ACQUISITIONS OF GEORGIA, LLC**

By: _____*/s/ Henry E. Dean, III*_____
Henry E. Dean, III
Manager

-and-

**THE LAW OFFICES OF ERIC N. MCKAY**

By: _____*/s/ Eric N. McKay*_____
Eric N. McKay

Florida Bar Number 0010215
3948 3rd Street South, Ste 297
Jacksonville, Florida  32250
(904) 273-2661

Attorney for The Monticello Companies, Property
Acquisitions, LLC, and Property Acquisitions of
Georgia, LLC